## Hartje *et al. versus* Collins.

*Contract "to advance the freight," construed.— Custom of dealers not admissible against terms of special contract.*

1. Where, in a contract under seal, for the sale and delivery of oil, it was stipulated that the vendee was "to advance the freight on said oil," and to deduct the amount thereof out of the price agreed on upon settlement; and that the oil was "to be paid for on delivery:" *Held*, that the vendee, if required, was bound to advance money to pay freight before the oil was shipped; and that if he refused so to do, the vendor might treat the contract as rescinded.

2. In an action by the vendee for damages for non-delivery, it was held error to receive evidence of a general custom on the subject of paying freight to the carrier on delivery of goods, because the parties had made their own contract, which was susceptible of easy explication, needed no aid from custom, and could not be controlled by it.

ERROR to the District Court of *Allegheny county.*

This was an action of covenant, by Henry H. Collins against Augustus Hartje, Frederick Helm, Conrad Eichholz, John Helm, and Lewis Roess, late partners doing business as Augustus Hartje & Co.

The plaintiff was, in October 1861, doing business in Pittsburgh and vicinity. The defendants had the control of a certain oil well at Oil Creek. On the 26th of October 1861, the parties entered into the following agreement:—" This agreement, made and entered into, &c., by and between Augustus Hartje & Co., of the city of Allegheny, state of Pennsylvania, of the first part, and Henry H. Collins, of the city of Pittsburgh, state of Pennsylvania, of the second part, witnesseth, that the said Hartje & Co. hereby promise and agree to deliver to the said Collins, at the mouth of Saw-Mill Run, on the Ohio river, between the 15th day of November 1861, and the 1st day of January 1862, one thousand barrels of crude carbon oil, or petroleum, said barrels to contain the average quantity (at least) of thirty-eight gallons of oil each, and said oil to be about the gravity of 42 degrees; said oil to be gauged on delivery, and gauging to be paid by said Hartje & Co.

" Said Henry H. Collins, party of the second part, hereby agrees to pay said Hartje & Co., for said oil, the price of seven cents per gallon, on delivery.

" Said Collins to advance the freight on said oil, and deduct

[Hartje *et al. v.* Collins.]

the amount of said freight out of the above price of seven cents per gallon, on settlement with said Hartje & Co.

"Said Hartje & Co. to have the privilege of delivering one thousand barrels more of same quality of oil on same terms as above, provided they notify said Collins at the time they deliver the first instalment of above one thousand barrels that they will do so.

"Said Collins to return the empty barrels to said Hartje & Co., at the mouth of Saw-Mill Run, with as little delay as possible.　　　　　　"AUG. HARTJE & CO.　[L. S.]

"Per AUG. HARTJE.

"HENRY H. COLLINS.　[L. S.]

"Witness, CHAS. B. STODDARD."

There were two copies of this agreement made, one being in the possession of the plaintiff, and one being in the possession of the defendants. The copy held by the defendants was in the main identical with the other, except that in the clause: "Said Henry Collins *to advance* the freight on said oil, and deduct the amount of said freight from the price of the oil, on settlement with A. Hartje & Co." The word "pay" had been originally written, which had been crossed out, and the word "advance" substituted by interlineation.

On the 11th of November 1861, Hartje & Co. drew the following order upon Collins the plaintiff:—

"$250.　　　　　　　"Allegheny, November 11th 1861.

"H. H. Collins, Esq.: Please let the bearer, Mr. J. M. Gardiner, have $250, part of creek freight, on account of contract, and charge the same to account of yours,

"AUG. HARTJE & Co.

"Per AUG. HARTJE."

This was delivered to J. M. Gardiner, a freighter between Oil Creek and Pittsburgh, and by him presented to Mr. Collins, together with the following note:—

"Allegheny, November 12th 1861.

"H. H. Collins, Esq.: Dear Sir,—Having contracted with Mr. Gardiner for the transportation of the oil under contract between you and our company, dated October 26th 1861:

"Now to enable us to fulfil said contract, we take the liberty in sending an order for $250 for part of creek freight, which you will be kind enough to honour, and which sum he alleges he must have, to pay the other parties to assist him in getting the oil down the creek.

"In honouring said order, and placing the amount to our account of contract, you will very much oblige

"Yours, respectfully,　　　　"AUG. HARTJE & Co.

"Per AUG. HARTJE."

[Hartje *et al. v.* Collins.]

Collins,. the plaintiff, refused to honour the draft; said that such was not the contract between him and Hartje, and that he would not pay Gardiner anything. Gardiner thereupon returned the papers to the defendants, with a report of the plaintiff's answer, and the defendants claiming that Collins had broken the terms of the agreement, did not deliver the oil, and when, in December 1861, they were called upon by Benjamin F. Collins, who as an agent of the plaintiff made a demand for the oil, replied that they had not the oil on hand, and did not intend to deliver it, as they had no longer any contract with Mr. Collins.

Upon the trial of the case below, the plaintiff produced in evidence the contract with the defendants; also evidence of the demand on Hartje & Co. for the oil in December; also evidence of the prices of oil during November and December 1861, which prices varied between the 15th of November and 30th December, from 8 to 15 cents per gallon.

He also proved under exception a general custom merchant as to the payment of freight, as being, in the case of oil, that the freight is usually paid upon delivery of the oil, before the gauging of the same.

The defendants then proved the demand of the money ($250) for advance freight, upon the order presented by Gardiner, the refusal of Collins to pay the same, and also that it was customary to pay the freight in instalments: first, for the empty barrels from the city of Pittsburgh to the mouth of Oil Creek; then for the same from the mouth of the creek.to the well; then the full barrels from the well to the mouth of Oil Creek; and then the same from the mouth of Oil Creek to their destination at or near Pittsburgh.

They also proved that some empty barrels had been taken up from the city to Oil Creek, on which $100 freight had been advanced by them; that they had plenty of oil at their well during the period at which the contract should have been fulfilled; that in fact it was running to waste, but that for want of funds they could not bring it down, Gardiner, the freighter, not having the means of doing so without some payment in advance of freight. That in December 1861, they did get down one hundred and thirty barrels, which was all they could bring, and that they could not get down any more till April 1862. The freight for the full barrels was 50 cents each from the well to the mouth of the creek, and $1 from the.mouth of the creek to Pittsburgh.

The defendants also proposed to prove by James M. Gardiner, witness on the stand, and other witnesses, that if he had received the money on the order upon H. H. Collins, already given in evidence, namely, $250, he would have brought down the oil within the time specified in the contract, as this money with that

[Hartje *et al. v.* Collins.]

advanced by the defendants, would have enabled him to pay the freight on the oil down the creek.

That the want of this money was the cause of delay in bringing down the oil; that he brought down the oil as soon as he could, and that the market price of the oil at the time when he was so enabled to bring it down was 5 cents per gallon.

The plaintiff's counsel objected to the above evidence as irrelevant, and the objection was sustained.

Defendants also offered to prove by the witness on the stand, and others, that the oil contemplated by the agreement in evidence, was oil produced from the wells of defendants on Oil Creek, six miles above the mouth, and that said oil was the oil contracted to be delivered, and for which the freights were to be advanced; which was objected to as irrelevant and incompetent, and rejected.

The defendants then requested the court to charge the jury,

1. That under the agreement the plaintiff was bound to advance to the defendants money sufficient to pay the freight upon the one thousand barrels contracted for, and the plaintiff having failed to do so, cannot recover.

2. That the contract contemplated the advancing of the whole freight to the defendants by the plaintiff, and not the payment of freight by the plaintiff to the carrier on delivery.

3. If the jury believe that the defendants, on the 12th of November 1861, demanded of the plaintiff $250 as part advance payment of said freight, per letter and order of the 11th and 12th of November 1861, and that the plaintiff refused to pay the same on said order, presented by J. M. Gardiner, the contractor for carrying and transporting the same; and if the jury believe further that the amount so demanded was not an unreasonable advance on said freight, then the plaintiff cannot recover.

4. That the evidence given by the plaintiff relating to the general custom of paying freight to the carrier on delivery of the goods, is not applicable to the present case, as the goods in this case were not to be delivered to a commission merchant or forwarding house, but to the purchaser, under a special contract, in which the purchaser was to advance the freight before shipment.

5. That the evidence given in regard to the general custom for paying freight to the carrier on delivery of the goods, is not applicable here, as this case arises under a special contract, by which the plaintiff was to advance the freight before shipment.

The court declined to charge as requested on the defendants' points, and instructed the jury that ["under the provisions of the contract between the parties given in evidence, the plaintiff

[Hartje *et al. v.* Collins.]

was not bound to advance to the defendants any moneys to enable them to pay the freight on the oil, before or at the time of contracting for its shipment. The plaintiff was only bound by the contract to pay or advance the freight on the delivery of the oil by the carrier.] The carrier would not be bound to deliver the oil except on payment of the freight, and after its delivery it was to be gauged and inspected at the expense of the defendants, when it was to be paid for by the plaintiff, first deducting the amount of the freight paid or advanced by him. If it had not been for this provision in the contract the defendants would have been obliged to pay or advance the freight to the carrier before receiving from the plaintiff the price of the oil.

["This provision in the contract is in accordance with the usage and custom of the trade,] and was inserted for the benefit of the defendants, to enable them to pay the freight on the oil out of the proceeds of sale, without being compelled to advance it out of other funds.

"The plaintiff's refusal to pay the order of the defendants in favour of Gardiner for $250, was no breach of the plaintiff's covenant, and constitutes no defence for the defendants' failure to deliver the oil as stipulated in their contract. As this is the only excuse set up, and as it altogether falls short of being a solid defence in the action, the jury will assess the damages sustained by the plaintiffs in consequence of the defendants' failure to comply with their contract.

"The measure of damages for the non-delivery of the oil is the difference between the market price of oil, of the quality specified in the agreement at the time stipulated for its delivery, and the price contracted to be paid by the plaintiff."

Under these instructions, there was a verdict and judgment for plaintiff. Whereupon the defendants sued out this writ, and assigned for error the refusal of the court to admit the testimony above mentioned, the negative answers given to the points propounded by them on the trial, and so much of the charge as is printed above in brackets.

*Woods & Koethen*, for plaintiff in error.

*Hasbrouck*, for defendants.

The opinion of the court was delivered by

THOMPSON, J.—The material question in this case is, as to the meaning of the words "to advance freight" on oil to be delivered by the defendants below. Did they import that the advance was to be made before the oil was to be conveyed from

[Hartje *et al. v.* Collins.]

the wells, or after ?  The contract was in writing, under seal, and the covenant, on part of the defendants, was to deliver two thousand barrels of crude carbon oil to the plaintiff, at the mouth of Saw-mill Run, on the Ohio river, between the 15th November 1861 and the 1st of January 1862, for which the plaintiff was to pay 7 cents per gallon, the oil to be gauged on delivery.  "The said Collins to advance the freight on said oil, and deduct the amount of said freight out of the above price of 7 cents per gallon, on settlement with said Hartje & Co."

The defendants called on the plaintiff by a draft in favour of Gardiner, with whom they had contracted to deliver the oil, for $250 on account of freight.  This draft was refused by the plaintiff.  The defendants claiming this as a refusal, on his part, to perform the contract, elected to treat it as rescinded, and delivered no oil upon the foot of it, and refused afterwards, on demand for the oil by the agent of the plaintiff, to deliver it.

We cannot hesitate to declare the true interpretation of the contract to be, that the plaintiff was bound to advance money to pay freight before the oil was shipped, if required, and that his refusal to do so, or to tender it afterwards, on demanding the oil, was fatal to his right of recovery.

It was a condition precedent, and he was bound to perform it. "To advance," is defined by lexicographers to mean, in commerce, "to supply beforehand; to furnish on credit, or before goods are delivered or work done; or to furnish as a part of stock or fund, as to advance money on loan or contract, or towards a purchase or establishment:" Webster's Dict. *verb.* "To advance."  As between factor and agent, it is often where money is paid on the credit of goods belonging to the principal, or to be placed in possession of the agent, to be reimbursed out of the proceeds of the goods : Bouv. Law Dict.

The object of this stipulation was undoubtedly to enable the defendants to run the oil down the river to the place of delivery. It was an advance payment on the oil, to aid in carrying it to the vendee.  It was not to be a payment of freight earned that was meant; for as soon as the freight should be earned by a delivery to the consignee, the oil itself was to be paid for—so says the contract—and then the vendors would need no advance. The oil was to be gauged on delivery : so that at the moment of time when the freight would be earned, if the case should be put on the strict commercial meaning of the word freight, that would be just the time when the oil itself was to be paid for.  It was entirely too narrow a ground to assume, that the advance to be made was to meet the demand for freight earned by the carriers before the delivery and the gauging of the oil.  Putting the case strictly on the footing of a marine contract, the consignees would

10 WR.—18

[Hartje *et al. v.* Collins.]

have been the party to pay the freight to the master, without any contract to that effect; but this was not intended to be the nature of the contract. It was simply an agreement to advance such part of the price of the oil as should be necessary to enable the defendants to send it on. The court erred, therefore, in ruling as they did, "that the plaintiff was only bound, by the contract, to pay or advance the freight on delivery of the oil by the carrier." So, too, it was error to receive evidence of a general custom on the subject of paying freight to the carrier on delivery of goods, because the parties had made their own contract, and it was susceptible of easy explication, and needed no aid from custom, and could not be controlled by it.

There was no error in refusing the offer of the defendants to prove that they would have delivered the oil according to contract, if the money drawn for had been advanced. They could rely on the fact that it was not paid, and they were therefore not bound to deliver for that reason.

We need not notice the other assignments of error in the case, as it turns conclusively on the point already noticed.

Judgment reversed, and a *venire de novo* awarded.